UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALVARO IGNACIO ABAUNZA,

       Plaintiff,

v.                                   Case No:  2:17-cv-194-FtM-99MRM

GEO GROUP, INC., CORRECT
CARE RECOVERY SOLUTIONS,
GEORGE ZOLEY, KRISTIN
KANNER, MIKE CARROLL,
DONALD SAWYER, REBECCA
JACKSON and CHRIS CATRON,

       Defendants.

_____/

## OPINION AND ORDER[1]

      This matter comes before the Court upon the following motions:  Defendants Sawyer, Jackson and Catron's Motion to Dismiss filed August 3, 2018 (Doc. 39, "Sawyer's Motion"); Defendants GEO Group, Inc. and George Zoley's Motion to Dismiss filed November 30, 2018 (Doc. 56, "GEO's Motion"); and, Defendants Kristin Kanner and Secretary Mike Carroll's Motion to Dismiss filed December 10, 2018 (Doc. 43, "Kanner's Motion").  Plaintiff filed a response in opposition to Sawyer's Motion (Doc. 42) and a consolidated response in opposition to GEO's and Kanner's Motions (Doc. 62).  For the

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

reasons set forth below, the Court will grant Defendants' respective motions and dismiss the Amended Complaint without prejudice.

**I.**

Plaintiff, an involuntarily civilly committed resident of the Florida Civil Commitment Center ("FCCC") in Arcadia, Florida,[2] initiated this action by filing a complaint pursuant to 42 U.S.C. § 1983 (Doc. 1).  Plaintiff's Amended Complaint is the operative complaint before the Court (Doc. 13, "Complaint").  The Complaint names the following defendants in both their individual and official capacities: George Zoley, Founder and Chair of GEO Group Inc./Correct Care Recovery Solutions; Ms. Kristin Kanner, Director of the Sexually Violent Predator Program; Mr. Mike Carroll, Secretary of the Florida Department of Children and Families; Dr. Donald Sawyer, Facility Director of the FCCC; Dr. Rebecca Jackson, Clinical Director of the FCCC; and Mr. Chris Catron, Security Director at the FCCC.  Doc. 1 at 2-3.  The Complaint challenges as unconstitutional the FCCC's policy and procedures that govern the system of protective custody.  *Id.* at 4.  Plaintiff complains that the policy "holds civil detainees who fear for their lives in isolation 23 to 24 hours a day for extended periods of time in the facility SMU."  *Id.*  Plaintiff avers that the policy amounts to "a form of punishment resulting in sensory deprivation" and thus violates his Eight Amendment rights.  The Complaint also challenges the protective custody policy as

---

[2]    Florida's Involuntary Civil Commitment for Sexually Violent Predators Act was enacted in Florida "to create a civil commitment procedure for the long-term care and treatment of sexually violent predators." Fla. Stat. § 394.910, et seq. A person who is found, after a hearing, to be a "sexually violent predator" is "committed to the custody of the Department of Children and Family Services for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." *Id.* at § 394.917.

violating the Due Process Clause of the Fourteenth Amendment claiming the policy "denied him the right to further the treatment progression phases regime established by the FCCC," which hinders his release from custody. *Id.* The Complaint sets forth the following averments in support of Plaintiff's above claims.

<u>Defendant Catron</u>

Defendant Catron is the Security Director of the FCCC and "is responsible for overseeing security functions and maintain a safe and secure environment at the FCCC." *Id.* at 3. Catron placed Plaintiff in protective custody in the Special Management Unit ("SMU") on August 24, 2015. *Id.* at ¶ 3-4. Plaintiff was isolated for 23-24 hours each day, "resulting in sensory deprivation, thereby causing his brain to atrophy" and was "deprived of his property and privileges." *Id.* at ¶¶ 5-6. On November 18, 2015, Plaintiff was released to general population. *Id.* at ¶ 7. Plaintiff "once again sought" protective management status on September 1, 2016. *Id.* at ¶ 8. Plaintiff alleges that Defendant Catron caused him "mental anguish, inconvenience, the loss of capacity for enjoyment of life and irreparable psychological harm." *Id.* at ¶ 11. Plaintiff estimates he spent "more than 180 days" in protective custody, over an unspecified period. *Id.* at ¶ 9.

<u>Defendant Zoley</u>

Defendant Zoley is the founder and Chair of GEO Group/Correct Care and was hired by DCF to operate the FCCC. *Id.* at 3. Plaintiff contends that Zoley was "acting under color of State and Federal law when isolating Plaintiff for 23 to 24 hours a day for extended periods of time" and further caused him "irreparable harm by not providing further treatment to persons under protective management status resulting in cruel and unusual punishment." *Id.* at ¶¶ 14-15.

<u>Defendant Sawyer</u>

Defendant Sawyer is the Facility Director/Administrator at the FCCC and "primarily responsible for developing and enforcing the programming and policies of the FCCC." *Id.* at 3. Sawyer created and authorized "a policy and manual that govern rules and regulations at the FCCC," including PRG-12 Limiting and Suspending Privileges. *Id.* at ¶ 12. A copy of PRG-12 is attached as Exhibit C to Plaintiff's Complaint. See Doc. 13-3. Defendant Sawyer "failed to implement a less restrictive non-punitive segregation system" that would permit individuals in the protected management status the same rights and privileges of the general population, including treatment. *Id.* at ¶ 23. Defendant Sawyer "forced" Plaintiff to sign a contract on April 7, 2015, that "prohibited him from seeking protection," a copy of which is attached as Exhibit E to the Complaint.[3] *Id.* at ¶ 24. Plaintiff was assaulted on July 26, 2017 by another resident, which Plaintiff claims would not have happened but for the April 7, 2015 contract. *Id.* at ¶ 25. Defendant Sawyer acted with deliberate indifference because he "deprived the Plaintiff of protection" and or "implement[ed] and enforce[ed] a policy that is harsher on those who seek protection than those who commit serious or repeated rule violation." *Id.* at ¶ 27.

<u>Defendant Jackson</u>

Defendant Jackson Is the Clinical Director at the FCCC and chairs the housing assignment committee. *Id.* at ¶ 28. Defendant Jackson has control over all resident

---

[3] The Complaint appears to contain a scrivener's error. The date of the Behavioral Contract attached to the Complaint is April 7, 2017. According to the Behavioral Contract, Plaintiff was assigned to "to a single person room in Oceans dorm." Plaintiff was permitted to remain in the single room, as opposed to being assigned to an open bay dorm, if conditions were met which included, avoiding conflict with other residents; speaking with a therapeutic staff member when he felt anxious; picking up and returning his own meal tray; and remaining free of any major disciplinary reports or requesting protective status. Doc. 13-5.

housing designations, including residents housing in the SMU.  *Id.* at ¶ 29.   Defendant Jackson acted with deliberate indifference "by not allowing Plaintiff to further treatment due to [his] protective management status."  *Id.* at ¶ 30.

<u>Defendant Kanner</u>

Defendant Kanner is the Director of the Florida Department of Children and Families' Sexually Violent Program and ultimately responsible for operations at the FCCC.  *Id.* at ¶ 32.  On May 10, 2015, Plaintiff "successfully completed the first phase of a four-phase treatment regime" established by Kanner.  *Id.* at ¶ 33.  Plaintiff was "precluded from progression in the treatment [program]" due to the FCCC policy that prohibits those in protective management from participating in treatment, which Plaintiff claims impedes his release from custody.  *Id.* at ¶ 34.

<u>Defendant Carroll</u>

Defendant Carroll is the Secretary of the Florida Department of Children and Families, the State Agency, which is the "State Agency with the maximum authority over the FCCC."  *Id.* at ¶ 36.  Defendant Carroll "failed to maintain a strict supervision over the contractual obligations between Geo Group/Correct Care Recovery and DCF."  *Id.* at ¶ 37.  Plaintiff is suing Defendant Carroll "for allowing the Corporation he contracted to isolate Plaintiff for 23 to 24 hours a day for extended periods of time and for not providing treatment due to protective management status."  *Id.* at ¶ 38.

Plaintiff attaches to his Complaint the following excerpts from the FCCC's Policy and Procedure Manual and other documents: a November 23, 2015 FCCC Resident Grievance Form (Doc. 13-1); the PRG-( Housing Assignment Procedures (Doc. 13-2); the PRG-12 Limiting and Suspending Privileges (Doc. 13-3); Resident Communication Form

(Doc. 13-4) and April 7, 2017 Behavioral Contract (Doc. 13-5). As relief Plaintiff seeks "substantial changes" to the FCCC's protective management policy, to include that persons in protective custody be afforded the exacts same privileges of the general population; $1,000,000.00 in compensatory and punitive damages; and attorney fees and costs; and injunctive relief requiring that Plaintiff be afforded "placement in a less restrictive setting back under protective custody" such as a "vacant single cell (Peace Unit)" with full privileges. *Id.* at 9-10.

## II.

Federal Rule of Civil Procedure 12(b)(6) must be read in conjunction with the pleading rules set forth in Rule 8, which requires a pleading to "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court reads Rule 8(a)(2) to require that a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (emphasis added). The plausibility standard is not analogous to a "probability requirement," but it does require more than a sheer possibility that a defendant has acted unlawfully. Id. at 556. A claim is *plausible* when "the pleaded factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the facts need not be detailed, they must "raise a reasonable expectation that discovery will reveal evidence" in favor of the plaintiff's claim. Twombly, 550 U.S. at 556. The issue is whether the plaintiff has provided enough information to proceed to discovery– not whether the plaintiff will win his case. Ashcroft, 556 U.S. at

678-79.  Once the plaintiff has reached discovery, he can collect evidence that will help him win his case.  Id.

Whether a plaintiff can survive a Rule 12(b)(6) Motion is "a content-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citations omitted).  Clearly, "unadorned, the-defendant-unlawfully-harmed-me-accusations" are not enough to proceed to discovery.  Id. at 678 (citations omitted).  And, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" alone are insufficient because every legal conclusion pled must be supported by factual allegations.  Id. (citations omitted).  Without enough factual allegations to raise a reasonable expectation of relief, dismissal is warranted under Fed. R. Civ. P. 12(b)(6). Id.  While the Court must accept the facts as alleged in a complaint as true, legal conclusions couched as facts as not accepted as true.  Twombly, 550 U.S. at 555. Further, the Court will "not consider anything beyond the face of the complaint *and documents attached thereto* when analyzing a motion to dismiss."  Financial Security Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007) (citing Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1368 (11th Cir. 1997)).

In the case of a *pro se* action, the Court should construe the complaint more liberally than it would pleadings drafted by lawyers.  Hughes v. Rowe, 449 U.S. 5, 9 (1980).  Nevertheless, *pro se* litigants are not exempt from complying with the Federal Rules of Civil Procedure, including Rule 8(a)(2)'s pleading standard. GJR Investments, Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998) ("Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action[.]"

(internal citations omitted)), overruled on other grounds as recognized in *Randall v. Scott*, 610 F.3d 701, 706 (11th Cir. 2010); *see also Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (stating that *pro se* litigants are "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure").

Because Plaintiff is civilly confined and not a prisoner his rights emanate from the Fourteenth not Eighth Amendment. *See Youngberg v. Romeo*, 457 U.S. 307, 312 (1982). Under the Fourteenth Amendment, an individual who has been civilly committed has liberty interests that "require the state to provide minimally adequate or reasonable training to ensure safety and freedom from undue restraint." *Id.* at 319. Like pretrial detainees, FCCC residents are afforded a higher standard of care than those who are criminally committed. *Id.* at 321-22; *Dolihite v. Maughon,* 74 F.3d 1027, 1041 (11th Cir. 1996) ("[P]ersons subjected to involuntary civil commitment are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."). In evaluating whether a condition or restriction accompanying detention is violative of a civil detainee's constitutionally protected rights, the Court considers whether the condition amounts to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Whether a condition is intended to punish or merely is incidental to some other legitimate governmental purpose turns on whether the restriction or condition "is reasonable related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment." *Ibid.* at 639. In doing so, the Court must be mindful that matters of administration of a facility are better suited to administrators and not the courts. *Id.* at 532.

III.

Liberally construed, the Complaint alleges that (1) the FCCC's protective management policy violates the Fourteenth Amendment because residents are housed in the SMU which also houses residents who are being held for disciplinary confinement and thus constitutes punishment; and (2) the FCCC's protective management policy violates Plaintiff's due process rights because he is unable to participate in treatment when he is on protected management status thus delaying his eventual release from the FCCC. The Court finds the Complaint as stated and exhibits attached thereto fail to contain sufficient factual allegations to raise a reasonable expectation of relief as to any of the defendants.

A. Kanner's Motion

Defendants Kanner and Carroll seek dismissal of the Complaint claiming the Complaint fails to comply with the pleading requirements and otherwise fails to state a claim as against Defendants Kanner or Carroll. Doc. 57. The Court agrees that the Complaint fails to comport with Fed. R. Civ. P. 10(b) in that the Complaint contains "group" pleading and generally attributes claims to the "Defendants." However, the Court does not find the Complaint "virtually impossible" to connect the allegations with the claim to warrant dismissal. *See Weiland v. Palm Beach County Sheriff's Office*, 792 F3d 1313, 1325 (11th Cir. 2015). Nonetheless, the Court finds the Complaint fails to attribute liability to Defendants Kanner and Carroll in either their individual or official capacities. There are no allegations that either Defendant Kanner or Carrol were personally involved in placing Plaintiff in protective custody management or involved in the adoption or implementation of the protective management custody policy with which Plaintiff takes issue. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) ("Supervisory liability occurs either when

the supervisor personally participates in the alleged constitutional violation or when there is a casual connection between the actions of the supervising official and the alleged constitutional deprivation.").  Further, there is no theory of *respondent superior* in § 1983 actions.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  Consequently, the Court will grant the Kanner Motion and dismiss Plaintiff's Complaint without prejudice to Defendants Kanner and Carroll.

### B.  GEO's Motion

Defendant GEO and Zoley seek dismissal of the Complaint because the Complaint is a "shotgun pleading."  Doc. 56 at 8.  Alternatively, Defendant GEO states it "was not actually the company that was in control of the FCCC at the time of incident."  *Id.*  Finally, Defendants seek dismissal on the basis that the Complaint fails to state a claim as to either Defendant GEO or Zoley.  As noted *supra*, the Court does not find the pleading deficiencies rise to the requisite level to warrant dismissal under Fed. R. Civ. P 8 or Fed. R. Civ. P. 10.  Further, whether GEO was "in control of the FCCC at the time of the incident" is an issue of fact that is properly brought *via* a motion for summary judgment, not motion to dismiss.  Nonetheless, the Complaint does not aver that the policy with which Plaintiff objects was implemented by GEO.  *See Monell, Id.*  Further, there are no allegations that Defendant Zoley was personally involved in placing Plaintiff in protective custody management or involved in the adoption or implementation of the protective management custody policy at issue.  *See Brown v. Crawford*, 906 F.2d at 671.  Additionally, as more fully discussed *infra*, the Court finds the Complaint fails to allege sufficient facts to support a claim that the policy at issue is unconstitutional.

Consequently, the Court will grant GEO's Motion and dismiss Plaintiff's Complaint without prejudice as to Defendants GEO and Zoley.

C. Sawyer's Motion

Defendants Sawyer Jackson, Catron and Correct Care move to dismiss the Complaint on the grounds that the Complaint is a "shotgun pleading" and otherwise it fails to state a ground for relief. Doc. 39 at 8. As stated above, the Court does not find the pleading insufficient under the procedural rules to warrant dismissal. The Court, after considering applicable caselaw and a thorough review of the Complaint and exhibits attached thereto, finds the Complaint fails to allege sufficient facts to plausibly state a claim under the Eight and Fourteenth Amendments.[4]

1. Conditions of Confinement

Although as a civil detainee Plaintiff's claim is founded upon the Fourteenth Amendment, in application the standard is the same as an Eighth Amendment prohibition against cruel and unusual punishment which applies to prisoners. *Hamm v. DeKalb County,* 774 F.2d 1567, 1571, 1574 (11th Cir.1985), *cert. denied,* 475 U.S. 1096 (1986). The courts have universally held that "administrative segregation and solitary conferment do not, in and of themselves, constitute cruel and unusual punishment." *Sheley v. Dugger,* 833 F.2d 1420, 14228-29 (11th Cir. 1987) (*citing Hutto v. Finney,* 437 678, 685 (1978)). Rather a claim challenging conditions of confinement must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious

---

[4] The Court would be remiss if it did not point out that Defendants' Motion fails to address the applicable standard and fails to provide the Court with any caselaw relevant to the claims advanced by Plaintiff. Nonetheless, the Court considers the Motion because it is mandated by statute to dismiss a case at any time if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(ii).

deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). "Under current precedent, administration segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." *Quintanilla v. Bryson,* 730 F. App'x 738, 746 (11th Cir. 2018). "The Constitution does not require that prisoners, as individuals or as a group, be provided with any and every amenity which some person may think is needed to avoid mental, physical and emotional deterioration." *Newman v. Ala.*, 559 F. 2d 283, 291 (5th Cir. 1977) (*rev'd in part on other grounds*, 438 U.S. 781 (1978). The Supreme Court has cautioned that "the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards." *Hutto,* 437 U.S. at 686. In evaluating whether confinement violates the Constitution, courts consider "the totality of the conditions of confinement." *Madyun v. Thompson*, 657 F.2d 868, 874 (7th Cir. 1981). Further, as noted above, courts have "afforded wide-ranging deference [to prison administrators] in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and maintain institutional security." *Bell v. Wolfish*, 441 U.S. at 547.

Initially the Court finds the Complaint deficient because it does not provide the exact verbiage of the protective management policy of which Plaintiff complains. Nor does Plaintiff point to which provisions of the FCCC's Policies and Procedures' Manual that he has attached as exhibits to the Complaint contain the objectionable provisions. Instead, Plaintiff suggests that the very fact that residents who seek protective management status are housed in the Secure Management Unit *ipso facto* gives rise to a constitutional violation. Plaintiff does not identify any conditions of his confinement that

fall below minimal constitutional standards of decency. Instead Plaintiff claims the fact that his privileges and property are restricted when he is on protected status constitutes punishment. According to the FCCC Policy and Procedure Manual, the need to restrict "personal property and privileges" is "significantly limited for safety and security reasons." Doc. 13-3 at 5. Further, despite being housed in Secure Management, Plaintiff still enjoys most services:

> Services that will be available to residents in [Secure Management Status] include being provided food that is the same as that provided to the general population during comparable meal-time hours, access to a nurse or physician to screen requests for medical attention, access to a chaplain when a chaplain is present in the facility, daily contact by a member of the clinical treatment team, and one hour of exercise out of the assigned room each day.

*Id*. The mere fact that Plaintiff's protected status results in his isolation does not, without more, violate the Constitution. *Quintanilla v. Bryson*, 730 F. App'x at 746. This is particularly true in the case *sub judice*. Plaintiff acknowledges that even after being released from protective management status on November 18, 2015, he "once again" requested to be placed back into protective management. Doc. 13 at ¶ 8. Moreover, Plaintiff's claim that Defendant Sawyer was deliberating indifferent because he was assaulted by another resident due to his inability to request placement on protective management status as set forth in the April 7, 2017 Behavioral Contract, is somewhat in conflict with his claim that protective management status violates the Eighth Amendment. *See* Doc. 13 at ¶¶ 24-26. Consequently, the Court finds the Complaint fails to allege sufficient facts to articulate a constitutional violation regarding the conditions of Plaintiff's confinement while on protective management status.

In an abundance of caution, the Court also addresses the Complaint's peripheral claim for failure to protect against Defendant Sawyer. "Merely negligent failure to protect an inmate from an attack does not justify liability under § 1983." *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013) (internal quotations and citations omitted). Rather, to show that a defendant was deliberately indifferent to the risk that plaintiff would be injured, a plaintiff must be able to prove that the defendant had subjective knowledge of the risk of serious harm and disregarded that risk by conduct that rises beyond negligence. *Id.* In other words, plaintiff must demonstrate that the defendant was aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists and that the official drew that inference. *Purcell v. Toombs County*, 400 F.3d 1313, 1319–20 (11th Cir. 2005). Here, the Complaint alleges only that Plaintiff was assaulted on July 26, 2017, but otherwise fails to allege any facts that would give rise to a claim that Defendant Sawyer was deliberating indifferent in failing to protect Plaintiff from the assault.

## 2. Due Process

To make out a denial-of-procedural-due-process claim, a plaintiff must allege and establish three elements: (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process. *Quintanilla*, 730 F. App'x at 743 (citing *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). Even if Plaintiff has adequately stated the first two elements (a liberty interest in being able to proceed with his treatment progression when on protective management status and state action), Plaintiff does not allege that he had constitutionally inadequate process. Notably nowhere does Plaintiff allege that he made a request to continue with

his treatment regimen and was denied permission to attend treatment. Further, the exhibits attached to the Complaint exhibit that "[R]esidents who are temporarily in Secure Management will be assessed daily by clinical/mental staff." Doc. 13-3 at 6, ¶ 3. Further, any "[r]estrictions and/or suspensions of privileges shall be individualized to person and circumstance" and the policy recognizes that although activities may be restricted a "resident may participate in the designated activity only when escorted or monitored." *Id.* *See Magluta v. Samples*, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) (recognizing periodic assessments of individuals placed in confinement complies with due process). Consequently, based on the Complaint as pled and as set forth in the exhibits attached to the Complaint, the Court finds Plaintiff has not alleged that he has been denied adequate due process in connection with his voluntary placement on protected management status.

Accordingly, it is now

**ORDERED:**

1. Defendants Sawyer, Jackson and Catron's Motion to Dismiss (Doc. 39) is **GRANTED.**

2. Defendants GEO Group, Inc. and George Zoley's Motion to Dismiss (Doc. 56) is **GRANTED**.

3. Defendants Kristin Kanner and Secretary Mike Carroll's Motion to Dismiss (Doc. 57) is **GRANTED**.

4. Plaintiff's Amended Complaint (Doc. 13) is **DISMISSED without prejudice**.[5]

---

[5] The dismissal without prejudice permits Plaintiff to refile a complaint in a new action should he be able to articulate with sufficient detail an Eighth or Fourteenth Amendment violation concerning the protective management policies to which he objects.

5. The **Clerk** shall enter judgment accordingly, terminate any pending motions, and close this case. The **Clerk** shall provide Plaintiff with a blank civil rights complaint form for FCCC residents should Plaintiff choose to file a new action, if appropriate.

**DONE** and **ORDERED** in Fort Myers, Florida this 26th day of March 2019.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

FTMP-1
Copies: All Parties of Record